United States Housing Corporation, Plaintiff, *v.* The City of Watertown et al., Defendants.

(Supreme Court, Jefferson Equity Term, December, 1920.)

Taxes — corporation engaged in exercising a federal agency not subject to — injunctions — National Defense Act of 1918.

> Where the property of a corporation engaged in executing a federal agency is itself the means by which such agency is executed, such property is not subject to taxation.
>
> The secretary of labor, who was authorized to exercise the powers delegated to the president by the National Defense Act of 1918, duly organized the plaintiff as a corporation under the laws of the state of New York, for the purpose of carrying out a provision of the federal statute. All of the capital stock of the corporation was subscribed, paid for, held and owned by the federal government. Said corporation acquired title to a large tract of land in the city of Watertown and constructed thereon a large number of dwellings for the housing purposes mentioned in the federal defense act. *Held,* that plaintiff was entitled to a permanent injunction to restrain the collection by said city of a tax assessed and levied upon the property so acquired, for state, county and municipal purposes.

Action for an injunction to restrain the collection of a tax.

Purcell, Cullen & Purcell, for plaintiff.

Harold L. Hooker, for defendants.

EMERSON, J. A national defense measure was enacted by congress in the year 1918, which provided that, for the purpose of housing industrial workers in industries essential to the national defense, and their families, the president was authorized to acquire by purchase or condemnation lands, and to construct thereon such houses or buildings as he might determine to be necessary for the proper conduct of the existing war, and to rent the same to the above industrial workers for the purposes aforesaid. He was to make just compensation for such purposes, and was required to make a full report to congress upon the subject at the beginning of each session. He was authorized to exercise any power or discretion therein granted and to enter into any arrangement or contract incidental thereto through such agency or agencies as he might create or designate, and, to that end, was authorized to create corporations for the purpose of carrying out such act if, in his judgment, such action was necessary or advantageous. If so created, the total capital stock was not to exceed $60,000,000, and that, if so created, representatives appointed by him, or such agency as he might designate to carry out the purposes of the act, should subscribe, own and vote the capital stock thereof for and in behalf of the United States, and should do all other things in regard thereto necessary to protect the interests of the United States and to carry out the provisions of the act. All moneys received therefrom were to be a revolving fund for the purpose of carrying out the provisions of such act until June 30, 1919, and all power and authority granted by said act was to cease with the termination of the then existing war when formally proclaimed by

the president, except the power to care for and dispose of such property as remained undisposed of, and to fulfill the obligations of the government in relation to the same. Such property was to be sold and disposed of with the termination of the war, no sale, however, to be consummated until authorized by congress, and all deeds executed, whether by such housing corporation, where the legal title was held in its name, or by the United States by the secretary of labor, should the title be held in the name of the United States, were to be conclusive evidence of the transfer of title. As soon as the property was disposed of, and all duties and obligations relating thereto were performed, such housing corporation was to wind up its affairs and be dissolved, and was to report to congress all sales made and amounts received therefrom, with a detailed statement of all receipts and expenditures on account of its activities, authorized by law, and any balance was to be covered into the Treasury of the United States. For the purpose of carrying out the provisions of the act congress appropriated the sum of $100,000,000.

Pursuant to the provisions of said act, the president authorized the formation of corporations for the purpose of carrying out the provisions of the same, and the plaintiff was duly organized as a corporation under the laws of this state by the secretary of labor, who was authorized to exercise the powers delegated to the president by the act aforesaid. All the capital stock was paid for by the federal government, and it was subscribed for, held and owned for the benefit of that government.

The plaintiff corporation thereupon acquired title to a large tract of land in the city of Watertown, and constructed thereon a large number of dwellings for the housing purposes mentioned in said act.

The municipal authorities of the city of Watertown

Supreme Court, December, 1920.   [Vol. 113.

have now assessed the property and levied a tax thereon for state, county and municipal purposes, and the plaintiff brings this action to restrain the collection of the same. A temporary injunction was granted, and plaintiff now asks a permanent injunction perpetually enjoining and restraining the enforcement of the aforesaid tax levy.

The question is thus presented whether said property is exempt from taxation. The case has been presented on both sides with masterful ability, and the research of counsel have called to my attention some of the most celebrated cases ever heard and decided by the United States Supreme Court. I have examined these cases with much care, and have arrived at the conclusion that the property in question is exempt from taxation. The power to tax involves the power to destroy, and no sovereignty could long exist were it subject to indiscriminate taxation by another government. Hence, the rule is so well settled as to have become an axiom in the law that the property of the United States Government is exempt from all state, county and municipal taxation. So also all necessary means and appliances used by it for governmental purposes are likewise exempt from taxation. The leading case upon the subject is conceded to be that of *McCulloch* v. *State of Maryland*, 4 Wheat. 316. In this case the state of Maryland had levied a tax upon the currency issued by the United States Bank. The case was argued for the government by Daniel Webster, and the Supreme Court of the United States sustained the position that he took, thereby giving him the name of the great expounder of constitutional law. The court unanimously held that this currency issue was exempt from taxation, the opinion being delivered by Chief Justice Marshall. The rule was thus laid down that the state could not tax any of the constitu-

tional means employed by the federal government to execute its constitutional powers, and that the states possessed no power by taxation to retard, impede, burden or control the operation of the constitutional laws enacted by congress to carry into effect the powers vested in the general government. This case has been followed ever since, and is still the recognized law of the land. See *Osborn* v. *United States Bank,* 9 Wheat. 738; *Thomson* v. *Pacific Railroad,* 9 Wall. 579; *Railroad Co.* v. *Peniston,* 18 id. 5; *Van Brocklin* v. *State of Tennessee,* 117 U. S. 151; *Central Pacific R. R. Co.* v. *State of California,* 162 id. 91; *Smyth* v. *Ames,* 169 id. 466.

It was suggested *arguendo* in the opinion in the *Thomson* case that there might be a distinction between a corporation organized to carry out a governmental purpose by the general government and one organized by the state, but this distinction was later disapproved by the court in the *Peniston* case, where it was held that the exemption of federal agencies from taxation depended, not upon the mode of their constitution, but upon the effect of the tax. That a tax upon their property merely was not unlawful if it did not hinder the exercise of their power to save the government, but that a tax upon their operation would be invalid.

It is quite true that the cases draw a distinction between the operation of the federal agency and the property it possesses. Thus in the *McCulloch* case it was said that the real estate owned by the United States Bank would be subject to taxation, but this was because the real estate was in no manner an agency in carrying out the federal purpose. The bank was a commercial enterprise and was engaged in general banking business with which the government had no concern, but the bills it issued were the currency of

the general government, and as to that, they accomplished a federal purpose, and consequently a tax laid thereon was unlawful.

So also in the *Thomson* and *Peniston* cases, where the general government, for the purpose of aiding the Union Pacific in the construction of a transcontinental railroad line, made large land grants and subsidies to that corporation on condition that the government should have a preferential right in the transportation of troops, war supplies, etc., for which adequate compensation was to be paid, it was held that the property of the corporations was not exempt from taxation, this because they were engaged in general transportation business, and the preferential rights of the government were merely incidental to the general business of the corporation.

But nowhere do I find it laid down that where the property of a corporation, engaged in executing a federal agency, is itself the means by which such agency is executed, that such property is subject to taxation. As is said in the *Peniston* case, a tax upon the property of a corporation is not unlawful when it does not interfere with the power of the corporation to serve the government, and leaves them free to discharge the duties they have undertaken to perform, but a tax upon their operations is a direct obstruction to the exercise of federal powers.

In the instant case the property itself was the only means and instrumentality by which the federal purpose could be carried out, and to tax this property would be to tax an agency solely engaged in carrying out the constitutional duties of the general government. It would be a tax on the means employed to carry out a federal power, and this, as we have seen, the municipality had no right to do. *Railroad Co. v. Peniston,* 18 Wall. 5, 41.

I find confirmation of the views above expressed in the decision of the United States District Court for the District of Maryland in the case of *United States* v. *Coohlan,* manuscript opinion, where, upon a very similar state of facts, it was held that the property was exempt from taxation.

It follows that the tax in question was wrongfully levied, and the plaintiff is entitled to a decree perpetually enjoining defendants from enforcing the same, with costs.

Ordered accordingly.